(No. 58487

*In re* SUPPORT OF CHRISTINE HALAS *et al.* (Therese M. Halas *et al.*, Appellants, v. Virginia H. McCaskey *et al.*, Appellees).

*Opinion filed September 20, 1984.—Rehearing denied November 30, 1984.*

William J. Harte, Ltd., of Chicago (William J. Harte and David J. Walker, of counsel), for appellant Therese M. Halas.

Larry R. Kane, of Chicago, for appellant Christine D. Halas.

Thomas C. Chuhak, P.C., of Chicago, for appellant Stephen Halas.

Kirkland & Ellis, of Chicago (Cornelius J. Harrington, Jr., William L. Rowder, John T. Hickey, Jr., and Alan C. Brown of counsel), for appellees.

JUSTICE WARD delivered the opinion of the court:

This appeal is from the appellate court's affirmance of the dismissal in the circuit court of Cook County of petitions filed by Therese M. Halas, one of the appellants. (112 Ill. App. 3d 940.) The petitions asked for increased child support and sought to prohibit the enforcement of certain amendments to an insurance trust established by Therese's former husband, George S. Halas, Jr., for her benefit and that of their two minor children, prior to their divorce and his later death. The appellees are Virginia H. McCaskey and A. Gerson Miller, the successor co-executors of the decedent's estate. (George S. Halas, Sr., the original executor of the estate and the trustee of all of the trusts concerned, died subsequent to the filing of the appellate court's opinion.) We granted leave to appeal under our Rule 315 (87 Ill. 2d R. 315).

Therese M. Halas and George S. Halas, Jr., were married on April 20, 1963, in Chicago and were divorced on January 17, 1975. At that time, they had two chil-

dren: Christine Desiree (then age 9) and Stephen George (then age 7). George married Patricia Navalio in 1978. He died on December 16, 1979.

The judgment for divorce incorporated a settlement agreement entered into by the parties, each of whom was represented by counsel. Under its terms, Therese was to have custody of the children. George was to pay Therese $50,000 for the first year following the divorce as alimony and for child support and $35,000 per year alimony and child support for nine years thereafter. The parties further agreed that the alimony payments would continue in the event that George predeceased Therese. The agreement referred to the source for these payments: "it being the intention of the parties that said obligation to wife be fulfilled by the insurance mentioned in Paragraph 5 hereof." Paragraph 5 of the settlement agreement provided:

> "The husband further covenants and agrees that he will keep and maintain in full force and effect insurance upon his life by doing any and all things necessary thereto in any amount no less than the unpaid balance of the alimony in gross due and owing the wife at any time, naming the wife or a trust for the benefit of wife as irrevocable beneficiary thereof until the husband's said obligation to pay alimony in gross to wife has ceased."

George also agreed to execute a will leaving half of his net estate to his living children; to pay for all costs and expenses incurred by Christine and Stephen in attending elementary school, high school, and college; and to pay extraordinary medical, dental, and hospital expenses that they might incur.

The agreement further provided that Therese was to retain the family home in Barrington, along with most of the furnishings and personal property situated there. George agreed to pay Therese $8,000 for her attorney fees, up to $1,000 for everyday living expenses incurred by

her up to then, part of her medical expenses, and $50,000 for the waiver of all "her right, title and interest in and to all the assets presently held in the husband's name or held by any *** entities in which husband may have an interest" except as otherwise provided in the settlement agreement. All jointly held accounts and securities were to be divided equally by the parties, except that George alone was to have the benefit of a $6,000 savings and loan account. George was to assist Therese in obtaining a major medical insurance policy.

The settlement agreement also provided:

> "To the fullest extent permitted by law, and except as herein otherwise provided, wife does hereby forever relinquish, release, waive and forever quitclaim and grant to husband, his heirs, executors, administrators and assigns, all rights of dower, homestead, inheritance, descent, distribution, community interest and all other right, title, claim, interest and estate as wife, widow or otherwise, by reason of the marital relations existing between husband and wife hereto under any present or future law, or which she otherwise has or might have or be entitled to claim in, to or against the property and assets of husband, real, personal or mixed, or his estate, whether now owned or hereafter in any manner acquired by husband; or whether in possession or in expectancy, and whether vested or contingent, and she further covenants and agrees for herself, her heirs, executors, administrators and assigns that she will never, at any time hereafter, sue husband or his heirs, executors, administrators, grantees, devisees or assigns for the purpose of enforcing any or either of the rights specified in and relinquished under this paragraph; and further agrees that in the event any such suit shall be commenced, this release, when pleaded, shall be and constitute a complete defense to any such claim or suit so instituted by wife; ***."

A companion paragraph provided for a similar release of all interest and claims by George. Finally, it was provided that each party "reserves the right to dispose by

testament or otherwise, of his or her respective property in any way that he or she may see fit, without any restriction or limitation whatsoever."

On April 23, 1976, in order to comply with paragraph 5 of the settlement agreement, George executed an amendment (hereafter the 1976 amendment) to an insurance trust originally established in June 1972 (hereafter the 1972 insurance trust). The 1972 insurance trust in its original form provided that the proceeds of nine specified insurance policies on George's life were to be paid upon his death to the American National Bank and Trust Company of Chicago, as trustee. Therese, as a beneficiary, had a one-half interest in the trust with the remainder evenly divided between Christine and Stephen. George reserved the right to change, modify or revoke the trust agreement at any time and to withdraw any of the policies from the trust. The 1976 amendment cancelled the plan for the distribution of proceeds under the 1972 insurance trust. It directed the trustee, upon George's death, to pay the obligation for alimony to Therese as it became due. The remaining trust property, if any, was to go to the trustee of testamentary trusts created by George's then existing will for his children's benefit.

The 1976 amendment also provided:

"12. I reserve the following rights, powers and authority which may be exercised at any time and from time to time:

(a) By written instrument delivered to the trustee to change, modify or revoke this agreement and the trusts hereby evidenced, in whole or in part, except that if changed or modified, the duties, powers and responsibilities of the trustee shall not be changed substantially without the trustee's written consent *and I may not change, modify or revoke this agreement in any way without the written consent of my former wife, Therese Martin Halas, as long as any of the gross alimony payments to be made to her*

*under the agreement with her attached hereto as Exhibit B [the settlement agreement] remain unpaid.*

(b) All benefits, privileges, payments, annuities, dividends, surrender values, options and elections accorded or available to me under any and all policies of life insurance which may be made payable to the trustee, including the right to change the beneficiary named in any or all of such policies, to deposit, assign, transfer or pledge them as collateral security for any loan which I make from lender (including said American National Bank and Trust Company of Chicago) and to withdraw any of such policies deposited with the trustee, *except that in compliance with paragraph 5 of Exhibit B at all times life insurance policies which are in force under which I am the insured shall be retained in the custody of the trustee and be payable in a lump sum to the trustee in an amount exceeding loans against such policies no less than the unpaid balance of the alimony in gross due and owing to my former wife, Therese Martin Halas, at any time under the provisions of the agreement with her attached as Exhibit B.* The trustee shall not be obligated to see that any policy so withdrawn is returned to the trustee's custody." (Emphasis added to portions which add to reservation of rights provisions in the 1972 insurance trust agreement.)

On August 22, 1978, George executed a "partial revocation" of the 1972 insurance trust as it had been amended in 1976, which directed the trustee to surrender one of the nine insurance policies which funded the trust. At the same time George executed an amendment (hereafter the 1978 amendment) to the trust agreement which directed the trustee, upon the decedent's death, to retain in trust only an amount of insurance proceeds sufficient to cover the total of the outstanding alimony payments to which Therese was entitled. The balance of the proceeds was to be distributed to a new trust (hereafter the 1978 trust) for the benefit of his children and his sec-

ond wife. The 1978 trust directed the trustee to distribute one-third of the proceeds, upon the decedent's death, to his widow, Patricia Navalio, and to divide the remainder equally between two separate trust funds, each having one of the minor children as its sole beneficiary. The 1978 trust was initially funded by the insurance policy surrendered under the 1978 partial revocation of the 1972 insurance trust and was additionally funded, upon the decedent's death, by approximately $405,000 of insurance proceeds from the 1972 insurance trust which were in excess of the amount necessary to satisfy the obligations of future alimony payments to Therese. As of September 30, 1981, there were assets of $376,822 in the two separate trust funds created for the children under the 1978 trust.

By his last will, executed on August 18, 1978, the decedent made a number of bequests, *viz*, he left articles of jewelry, clothing, sports equipment, trophies and other personal articles to his children; he left silverware, pictures, books, house furniture and furnishings, automobiles and his interest in their condominium and certain mineral leases to his second wife; and he left his stock interests in the Chicago Bears professional football team to his father, George S. Halas, Sr. (The petitioner states that the bequest was to George S. Halas as trustee for the benefit of the children of the decedent and petitioner. Whether this is so is not apparent from the record filed here.) The remainder of his estate was to be equally divided between his widow, Patricia, and two testamentary trusts, each naming one of his children as its sole beneficiary. As of September 30, 1981, there were assets of approximately $228,000 in the testamentary trusts for the benefit of the children, and additional assets were to be added at the close of the probate estate.

In 1981, Therese M. Halas filed petitions in the circuit court seeking increased child support under section

510(c) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1981, ch. 40, par. 510(c)) and to prohibit enforcement of the 1978 amendment and the 1978 "partial revocation" of the 1972 insurance trust. A guardian *ad litem* was appointed for the two children.

The circuit court dismissed Therese's petitions, and the appellate court affirmed. The trial court also dismissed, without leave to amend, a petition Therese had filed asking that certain sections of the divorce decree be set aside under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 72). The appellate court affirmed dismissal of the section 72 petition, too, but allowed her leave to amend the petition. No appeal was taken from this part of the appellate court judgment, and we do not consider here the adequacy or merit of the section 72 petition.

Since the appellate court's opinion was filed, Christine D. Halas has attained the age of majority and is no longer represented by a guardian *ad litem*. She and the guardian *ad litem*, representing Stephen G. Halas, concur with and adopt the arguments of Therese, and she and the guardian *ad litem* jointly filed a brief supplementing the brief filed by Therese.

The appellants first contend that the decedent's modifications in 1978 to the 1972 insurance trust as it was amended in 1976 were invalid. The decedent acted unilaterally in making the 1978 amendment and the partial revocation, and they contend that paragraph 12(a) of the 1976 amendment, set out above, required the decedent to obtain Therese's consent to any modification as long as she was entitled to any alimony. The appellees argue that the veto power granted to Therese in paragraph 12(a) conflicts with the decedent's express reservation, in paragraph 12(b), of the right to withdraw insurance policies from the trust in excess of those necessary to

pay the outstanding alimony. They suggest that paragraph 12(b) must control here in order to give meaning to all of the language.

"The purpose of judicial construction of a trust instrument is to ascertain the intent of the settlor and carry it out [citation] and in so doing the instrument must be considered as a whole." (*American Rubber & Plastic Corp. v. First National Bank* (1971), 50 Ill. 2d 172, 174.) The provisions of the instrument are not to be read in isolation (*Vournazos v. Vournazos* (1979), 71 Ill. App. 3d 672, 676), and in ascertaining intent, a court must not limit its consideration to the language of a particular paragraph, phrase, sentence or clause (*First National Bank v. Canton Council of Campfire Girls, Inc.* (1981), 85 Ill. 2d 507, 515; *La Throp v. Bell Federal Savings & Loan Association* (1977), 68 Ill. 2d 375, 381). Paragraph 12(a) must be read in light of its companion paragraph 12(b) in section 12 of the 1976 amendment. Paragraph 12(b) expressly reserved the right of the decedent to withdraw any policies from the 1972 insurance trust as long as there remained in the trust policies payable in a lump sum no less than the amount of unpaid alimony owing to Therese. We agree with the appellate court that paragraphs 12(a) and 12(b) are "clearly inconsistent"—the former requiring consent for any modification and the latter reserving the right to make certain modifications without consent as long as future alimony payments were insured.

"The rules of construction which apply to the interpretation of contracts apply to the construction of trust instruments as well." (*Northern Trust Co. v. Tarre* (1981), 86 Ill. 2d 441, 450.) It is fundamental in contract construction that, if possible, effect must be given to all of the language so that provisions which appear to be conflicting or inconsistent may be reconciled and harmonized. (*St. Paul Fire & Marine Insurance Co. v.*

*Frankart* (1977), 69 Ill. 2d 209, 216; *First National Bank v. Baker* (1976), 35 Ill. App. 3d 676, 681.) To construe paragraph 12(a) to require Therese's consent to a modification of the 1972 insurance trust which would not jeopardize payment of the remaining alimony due her would render meaningless paragraph 12(b)'s specific reservation of the right to withdraw insurance policies from the trust. We consider that the circuit and appellate courts were correct in determining that the 1978 modifications were not improper, since the 1976 amendment reserved the right of the decedent to withdraw policies from the 1972 insurance trust without Therese's consent as long as payment of the future alimony was insured. This is the only possible construction of section 12 which is consistent with the express purpose of the 1976 amendment, *viz*, to comply with paragraph 5 of the settlement agreement requiring George to "maintain \*\*\* insurance upon his life \*\*\* in any amount no less than the unpaid balance of the alimony in gross due and owing the wife at any time."

The appellants' request in the circuit court for an increase in child support was on the ground that payments the deceased father had voluntarily made supplemental to those provided for in the divorce decree had terminated upon his death and that the cost of living increased through inflation and by the children's advancing ages. As related, the trial court dismissed the petition for increased child support and the appellate court affirmed. The appellants now contend that both courts erred in restrictively interpreting section 510(c) of the Act in dismissing the petition. Section 510(c) provides:

"Unless otherwise agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by emancipation of the child, except as otherwise provided herein, but not by the death of a parent obligated to support the child. When a parent obli-

gated to pay support dies, the amount of support may be modified, revoked or commuted to a lump sum payment, to the extent just and appropriate in the circumstances, and such determination may be provided for at the time of the dissolution of the marriage or thereafter." Ill. Rev. Stat. 1981, ch. 40, par. 510(c).

The circuit and the appellate courts appear to have been of the view that this court's decision in *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, was that modification of child-support payments from an estate is restricted to those situations where the deceased parent has disinherited the child. The holding in *Kujawinski,* however, was that the involved sections of the Act did not violate the equal protection clauses of the Federal and State constitutions as they were rationally related to a legitimate legislative purpose. *Kujawinski* did not explicitly restrict modification of child support under section 510(c) to situations where a divorced parent seeks to disinherit a child entitled to the parent's support. More broadly, the language of the section shows that the section provides that the obligation to support will survive the death of the parent obliged to provide child support.

Although the appellate court's reading of *Kujawinski* was too narrow, it correctly agreed with the trial court that no modification of a support order was warranted where "the person obligated to pay support has adequately provided for the children." (112 Ill. App. 3d 940, 947.) Section 510(c) authorizes modification of child support, when a parent obligated to pay support dies, "to the extent just and appropriate in the circumstances." The trial court heard considerable evidence concerning the appellants' claim of a substantial change in circumstances causing increased expenses. While apparently accepting the claim of increased expenses, the court took into account other changed circumstances affecting the children's welfare and their expenses. (See *Harner v.*

*Harner* (1982), 105 Ill. App. 3d 430.) The evidence had also revealed that at least $604,000, in addition to a portion of the annual $35,000 alimony payments, had become available to provide for the two children's support. The increase in assets available for their maintenance was clearly more than sufficient to offset their increased expenses. We cannot say that the trial court's finding that Christine and Stephen were adequately provided for was against the manifest weight of the evidence. See *Sullivan v. Sullivan* (1978), 57 Ill. App. 3d 958; *Addington v. Addington* (1977), 48 Ill. App. 3d 859.

The appellants also contend that child-support payments should be increased despite the availability of at least $604,000, as of now, for the children through the testamentary and insurance trusts, because there would be a tax benefit if the children received payments from the principal of the insurance trusts, which would be nontaxable, rather than as taxable testamentary distributions. Too, they argue that control of these funds should be with the surviving parent, not with a trustee who is directed to make disbursements as the trustee feels necessary or appropriate. We need not consider the claimed tax implications involved here, for a court should not require a result different from the decedent's wishes in order to secure the most favorable tax consequences involving discretionary assets.

The appellants say too that it is possible that the trustee of the trusts provided for the children's benefit could be hostile or abuse discretion in disbursing funds. They ask that the funds be withdrawn from the trusts and turned over to Therese for disbursement as support payments. The request properly was rejected. It would be ridiculous to divest a trustee of the responsibility the decedent had placed with him on a naked speculation that he might not discharge his duties.

The decision in *In re Marriage of Dwan* (1982), 108

Ill. App. 3d 808, cited by Christine and the guardian *ad litem,* is not in point. The holding there was limited to holding that child-support funds should be under the control of the custodial parent. It did not involve the control of testamentary dispositions by a divorced parent to his children. The child-support payments here are paid to Therese and are under her control as required under *Dwan.*

For the reasons given, the judgment of the appellate court is affirmed.

*Judgment affirmed.*