Richard L. GOLDBERG, Plaintiff,

v.

**HILLTOP APARTMENTS, INC., an Illinois Corporation, Samuel E. Alexander and William E. Warnstedt, Defendants.**

No. 87 C 7448.

United States District Court,
N.D. Illinois, E.D.

April 21, 1988.

Robert R. Teppen, David Todd Brown, Rosenthal & Schanfield, Chicago, Ill., for plaintiff.

Roger L. Longtin, Keck Mahin & Cate, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Richard Goldberg brings this diversity action charging breach of a real estate sales contract. Both sides have moved for summary judgment. For the reasons stated herein, Goldberg's motion for summary judgment is granted, and defendants' motion is denied.

### Factual Background

Goldberg purchased an apartment building in Cook County from defendant Hilltop Apartments under the terms of a valid and enforceable sales contract. A rider to the contract provided in ¶ R–13 that the seller would assume the risk of any significant tax increase as a result of Cook County's quadrennial reassessment of the property:

Seller and each principal of Seller shall guarantee that the *"Anticipated Taxes" (as hereinafter defined for the Premises for tax year 1987)* shall not exceed the sum of $42,500 (the "Base Amount") ...

If the "Anticipated Taxes" for the Premises as a result of the change in assessed valuation exceeds the Base Amount, then Purchaser shall receive from Sellers (jointly and severally) an amount equal to the positive difference between the "Anticipated Taxes" and the Base Amount multiplied by 4....

For purposes hereof, "Anticipated Taxes" shall be fixed and determined by multiplying *the full assessed valuation*

*of the Premises determined by the Cook County Assessor during the 1987 quadrennial reassessment* without reduction due to any special considerations by the most recent ascertainable state equalization factor and tax rate applicable to the Premises. (Emphasis added).

Pursuant to the rider, seller placed $27,500 in escrow as security for its obligations. Defendants Alexander and Warnstedt, sole shareholders of Hilltop, personally guaranteed the rider.

This action might never have been filed had Cook County not decided approximately one month before the parties signed the contract and accompanying rider to re-schedule the quadrennial reassessment to 1986, one year sooner than previously scheduled and noted in the rider. At the time the parties signed the contract, they were unaware of Cook County's decision.[1] On December 17, 1986, the Cook County Assessor reassessed the property, leading to a significant increase in the 1986 tax bill. After defendants appealed the assessment valuation, they released the $27,500 in escrow to Goldberg. Goldberg filed this action after demanding without success that defendants remit the outstanding monies allegedly due.

### Analysis and Decision

Resolution of this dispute hinges on a determination of the event that triggered defendants' liability under ¶ R–13. In support of their respective positions, Goldberg and defendants key on two clauses in the rider that conflict only because Cook County reassessed the property in 1986 instead of 1987. Goldberg contends that the 1986 tax bill triggered liability because the rider defines "Anticipated Taxes," the key term, as the "valuation ... determined ... during the 1987 quadrennial reassessment," and other provisions in the rider render "1987" superfluous as used in this definitional clause. Defendants counter with the clause that actually establishes liability—

"Seller shall guarantee ... the 'Anticipated Taxes' ... for tax year 1987"—and contend that "quadrennial reassessment" is mere surplusage. Reading the contract as a whole, we agree with Goldberg.

Under Illinois law,[2] contracts are interpreted as a whole, with reasonable meaning given to all terms after reviewing each provision in light of all others. *Air Line Stewards, Etc. v. Trans World Airlines,* 713 F.2d 319, 321 (7th Cir.1983). When faced with inconsistent or conflicting contractual language, we give effect to the interpretation of that language that best reconciles and harmonizes each provision with the remainder of the contract. *In re Halas,* 104 Ill.2d 83, 83 Ill.Dec. 540, 470 N.E.2d 960, 964 (1984):

Where a term is susceptible of two possible and reasonable interpretations, that interpretation which best accords with the remainder of the instrument will be chosen. *Kardolrac Industries v. Wang Laboratories,* 135 Ill.App.3d 919, [90 Ill. Dec. 567, 569] 482 N.E.2d 386, 388 (1st Dist.1985).

We are faced here with two rider provisions, the liability and definitional clauses, that conflict as a result of the change in the tax reassessment year. Applying the principles of contract interpretation set forth above, we conclude that finding defendants liable for taxes assessed in 1986 as a result of the unexpectedly early quadrennial reassessment best reconciles the two clauses with the remainder of ¶ R–13 of the rider.

The parties set forth in ¶ R–13 the extent to which Goldberg and the defendants would assume the expense of challenging Cook County's reassessment valuation:

In the event Seller determines to contest any reassessment, Seller at its sole cost and expense shall retain and employ counsel or tax reduction services for the

---

1. There is no evidence that either party actually knew of the change in the reassessment date prior to the signing of the contract. Defendants contend that Goldberg had constructive notice from a *Chicago Tribune* article that reported Cook County's decision. However, defendants

provide no legal support for holding Goldberg to such constructive notice, and, in any event, defendants would also be held to such notice.

2. The parties do not dispute that Illinois law governs this action.

purpose of seeking a reduction in the assessed valuation of the Premises *during the upcoming quadrennial reassessment for 1987 ...* If the "Anticipated Taxes" shall be less than the Base Amount, Purchaser agreed to pay all fees of the tax counsel or service [incurred by the Seller] to obtain said reduction provided that the obligation of Purchaser hereunder shall not exceed 25% of the tax savings payable *in each of the subsequent four years during said quadrennial reassessment period.* (Emphasis added).

The highlighted portions of these clauses indicate clearly that the tax bill which the Seller may challenge in order to reduce its liability is the tax bill assessed in the first year of the quadrennial reassessment period and the parties expected that quadrennial reassessment to occur in 1987. These clauses support Goldberg's position that the parties intended liability to attach whenever Cook County reassessed the property and no later. Ignoring "quadrennial reassessment" as used in the "Anticipated Taxes" definition, as defendants suggest, would require ignoring its clearly intended use here.

Further buttressing our conclusion is the clause in ¶ R–13 that sets forth the formula for the calculation of defendants' liability:

If the "Anticipated Taxes" for the premises as a result of the change in assessed valuation exceeds the Base Amount, then Purchaser shall receive from Sellers (jointly and severally) an amount equal to the positive difference between the "Anticipated Taxes" and the Base Amount multiplied by 4....

Here, "Anticipated Taxes" are defined in the context of "the change" in the property's assessed valuation, and the multiplication factor of four suggests that liability accounts for each year after the upcoming quadrennial reassessment and until the next reassessment.[3]

### Conclusion

We find that the proper construction of the conflicting provisions is that defendants are liable for the 1986 tax bill, the first tax bill incorporating the quadrennial reassessment.[4] Accordingly, Goldberg has demonstrated on the undisputed facts that he is entitled to judgment as a matter of law, and his motion for summary judgment is granted. Defendants' motion is denied. It is so ordered.

**3.** Both parties attempt to buttress their respective positions by pointing out the time at which defendants disbursed funds from the escrow account. The rider provides that escrow funds will be disbursed upon the earlier of "such time as Purchaser receives notice from the Cook County Assessor of its determination of the assessed valuation for the Premises as a result of the quadrennial reassessment or nine months from the date of closing." Reading "notice" as the *final* determination of valuation (as defendants strenuously argue), both of these alternative triggering events occurred approximately at the time defendants actually disbursed the funds. Therefore, neither party can find refuge in that clause.

**4.** Since we conclude that liability attached to the 1986 tax bill, we need not address defendants' further contention that liability does not attach until the assessment roll and tax multiplier for the 1987 tax assessment are certified, which "[b]ased on experience from past years ... should take place on or about June 1988." Defendants do not deny that such certification for the 1986 tax rolls has already occurred.