City of Aurora et al., Appellees, *v.* City of Bay Village et al., Appellants.

[Cite as Aurora v. Bay Village (1971), 27 Ohio App. 2d 17.]

(No. 30777—Decided June 4, 1971.)

*Mr. Guerin L. Avery, Mr. Raymond D. Metzner* and *Mr. Norman L. Christley,* for appellees.

*Mr. Clarence L. James, Jr.,* law director, city of Cleveland, *Mr. John F. Dolan, Mr. Thomas S. Watson,* and *Mr. James W. Head,* for appellants.

Manos, P. J.  In 1966, in response to the growing revenue needs of the city of Cleveland, Ordinance No. 2393-66 was enacted. This ordinance established a threefold master plan for (1) a Cleveland income tax, (2) tax reciprocity for other municipalities in Cuyahoga and contiguous counties which passed similar legislation, and (3) a method by which to administer the collection and disbursement of these taxes.

Under its provisions, an income tax of 1% of gross salary was imposed upon all who resided or were employed in Cleveland. Recognizing that the income tax legislation would create an insurmountable obstacle to suburban enactment of additional income taxes, the city of Cleveland, under Section 115.1901, provided a 25% tax credit to the community of residence of non-resident persons taxed in Cleveland, provided:

"that such credit shall not be allowed unless such other municipality imposes on its residents a tax on the same income and reciprocal provision is made in the ordinance of such other municipality granting to non-residents thereof a credit of not less than the percentage provided for herein against the tax levied thereby * * * ."

As a direct result of these two sections, the appellee suburbs, considering ordinances imposing an income tax of their own, were confronted by the certainty that if they did not pass reciprocal ordinances when at the same time Cleveland imposed an income tax on those suburbanites who worked in Cleveland, those many residents would probably be taxed twice and would probably successfully initiate a referendum to defeat any councilmanic action establishing an income tax.  To avoid any possibility of those problems arising, the suburbs responded to Cleveland's ordinances by providing similar reciprocal legislation.

Inherent in the reciprocal tax credits passed by Cleveland and the various suburban communities was the massive task of devising a method whereby the 25% tax credit would be collected and disbursed to the municipalities entitled to them. Realizing that this problem was a natural outgrowth of enacting the first two steps of the plan, step three was enacted under Section 115.2311, it reads:

"The Administrator may and he is authorized hereby to enter into an agreement with any other municipal corporation for the purpose of administering the income tax laws of such other municipal corporation as its agent and of providing a central collection facility for the collection of the income tax on behalf of such other municipal corporation."

Louis Corsi, therefore, acting under the authority vested in him by action of the Cleveland City Council, negotiated and entered into an agreement with the suburbs to set up a Central Collection Agency. This Agency, in its initial stages, unravelled and solved many of its operational problems.

However, in the Agency's fourth year of existence, the city of Cleveland, reaching a financial crises, repealed its ordinance granting reciprocity to the suburban communities. As a result the suburbs brought the present action based upon the Agreement, in the Court of Common Pleas to enjoin Cleveland from effectuating the repeal of its ordinance before the end of the calendar year. The Common Pleas Court, by summary judgment, ruled that Cleveland was estopped from effecting the repeal of reciprocity until a reasonable time had elapsed. It is from that decision that the City seeks appellate relief.

After a careful examination of the copious errors assigned by the appellant, the city of Cleveland, we find none which require reversal of the judgment. The ensuing opinion will comment upon those issues which adequately resolve the problems presented by the facts in this case. Although our judgment is consistent with that reached by the Court of Common Pleas, we arrive at this result by a somewhat different route without reaching or touching upon the issue of equitable estoppel.

This appeal does not rest on the power of Cleveland to repeal tax reciprocity, but rather on the issue of what point in time that repeal can become effective. In order to answer this question, the rights and obligations of the parties to the Central Collection Agency Agreement must be considered.

In interpreting contracts, it is necessary to give the words used their ordinary, common and usual meaning in ascertaining the intention of the parties in the context of the subject matter, nature and objects of the contract. See *Coe* v. *Suburban Light & Power Co.*, 32 Ohio App. 158; *Employers' Liability Assurance Corp.* v. *Roehm*, 99 Ohio St. 343; *Morgan* v. *Boyer*, 39 Ohio St. 324; *Railroad Co.* v. *Railway Co.*, 44 Ohio St. 287; *Benes* v. *Hickox Bldg. Co.*, 55 Ohio Law Abs. 289; *McBride* v. *Prudential Ins. Co.*, 147 Ohio St. 461. It is also an often-stated principle that rules of construction cannot be used to vary the meaning of a contract which is clear and unambiguous on its face. See *Great Lakes Towing Co.* v. *Bethlehem Transp. Corp.*, 65 F. 2d 543; *Blosser* v. *Enderlin*, 113 Ohio St. 121; *Fidelity & Casualty Co.* v. *Hartzell Bros. Co.*, 109 Ohio St. 566; *Federal Gas Co.* v. *Columbus*, 96 Ohio St. 530; *First National Bank* v. *Houtzer*, 96 Ohio St. 404.

As in any other contract, the intent of the parties should be established by examining the agreement in its entirety. The Agreement starts by enumerating the reasons for which the contract was made. One of those stated reasons is reciprocity. The suburbs argue that a complete reading of the Agreement clearly indicates that the entire system of central collection is designed only to administer reciprocity. Cleveland, however, argues that although reciprocity is an element of the contract it is not the purpose for which it was executed. The city argues that central collection functions the same notwithstanding the elimination of reciprocity. We find the interpretation of the suburbs to be the more consistent with the contractual language here in issue.

A careful examination of the Central Collection Agreement in the context of the income tax passed by Cleveland,

the reciprocal credits granted by ordinance, the authority granted to Louis Corsi to contract, and the corresponding similar legislation passed by the suburban communities, leaves no doubt that the Agreement was executed for the sole purpose of administering tax reciprocity. This intent is clear and unambiguous from a reading of the Agreement in conjunction with the legislation enacted. The Agreement provides in one of its "whereas" clauses that "the various municipalities desire to delineate their relationship as to tax reciprocity * * * ." In addition, Article II(B) states, "Each of the Participants hereto recognize the reciprocal provisions of the other Participants' ordinances as referred to herein and agree to respect and follow such reciprocal provisions." There is no ambiguity in these two clauses to establish anything contrary to the conclusion that reciprocity was the motivating factor in the agreement to centrally collect and administer the various income taxes. No other intent can be extracted from the express language of the Agreement. In the absence of reciprocity, the suburbs would gain no benefit whatever by having Cleveland collect its taxes and return nothing to their local treasuries. We can only conclude, therefore, that if Cleveland had not granted reciprocity, the suburbs would never have considered an agreement to collect their own taxes by central collection. It was Cleveland which instigated the entire income tax plan using reciprocity as a key to its success. We presume parties to a contract act rationally by agreeing with others only if some benefit can be derived by doing so.

Since reciprocity is the hub of the Agreement, Cleveland's repeal of its reciprocal tax credit was tantamount to withdrawing from the Central Collection Agency Agreement. Article IX(A) provides that Cleveland may withdraw from the Agreement by *giving written notice no later than the February 20th prior to the effective date of withdrawal and the effective date can only be on December 31st.* Not having complied with this provision, Cleveland is enjoined from cancelling its reciprocity provision with the suburbs until it meets the conditions of Article IX(A).

Equitable relief is necessary as there is no adequate remedy at law. In reliance upon the Agreement, the suburbs established budgets consistent with the belief that they would receive a 25% tax credit. It would be impossible to speculate as to the amount of money damages Cleveland would have to pay in an action at law.

Some additional comment is necessary to resolve other issues raised by the city of Cleveland.

Cleveland contends that Louis Corsi acted beyond the scope of his authority by binding Cleveland to the Agreement when he was designated to act only as an agent for the suburbs. Section 115.2311, authorizing him "to enter into an agreement on behalf of the City of Cleveland with any other municipal corporations * * *" clearly compels the conclusion that Louis Corsi acted within the scope of his authority as Cleveland's agent in establishing the Central Collection Agency, and after the agreement was executed he acted in a dual capacity as Administrator of Cleveland's income tax and as the Administrator of the Central Collection Agency.

When appellant argues that it cannot by contract eliminate its power to pass, repeal or amend taxation, it argues too much. It asserts that it can never be bound by any contract which involves legislation.

We cannot support such a broad contention. We agree that it is beyond judicial power to enjoin a government from legislating that which it is entitled so to do, but courts can enforce a valid contract for a party who has lived up to its obligations when the other party has failed to meet its obligations. This is all we do here today. Inasmuch as we find no material facts in dispute, we find that the summary judgment was properly granted.

*Judgment affirmed.*

SILBERT, J., concurs.

KRENZLER, J., dissenting. I dissent from the majority decision. Defendant appellant's motion for summary judgment should have been granted.

On November 28, 1966 Cleveland City Council enacted a municipal income tax ordinance (No. 2393-66), which became Chapter 115 of the Codified Ordinances of the City of Cleveland.

Sections 115.1901 and 115.1902 provided for reciprocity with other communities having similar income tax ordinances. The reciprocity provisions affected non-resident taxpayers and Cleveland residents subject to income tax in other municipalities.

Section 115.2311 authorized the Administrator to contract for central collection facilities as follows:

"The Administrator may and he is authorized hereby to enter into an agreement on behalf of the City of Cleveland with any other municipal corporation for the purpose of *administering* (emphasis added) the income tax laws of such other municipal corporation as its agent and of *providing a central collection facility* (emphasis added) for the collection of the income tax on behalf of such other municipal corporation."

On March 2, 1967, Louis V. Corsi, Administrator of the Division of Income Tax, executed an agreement entitled "Agreement For Central Collection of Municipal Income Tax Between Various Municipal Corporations."

The Central Collection Agency has administered the various municipal income tax laws and provided a central collection facility from 1967 to the present time. On September 2, 1970, the city of Cleveland enacted Ordinance No. 1437-70 which eliminated the reciprocity provisions of its income tax ordinance, effective October 1, 1970.

Plaintiffs appellees brought this action on September 16, 1970, to prevent Cleveland from canceling its tax reciprocity without following the withdrawal procedures of Article IX of the Central Collection Agency Agreement. Both plaintiffs appellees and defendants appellants filed motions for summary judgment. The trial court granted plaintiffs appellees' motion and entered judgment against the City of Cleveland.

The trial court declared Ordinance No. 1437-70 null and void insofar as it attempts to cancel and annul, effective October 1, 1970, the reciprocity portions of Ordin-

ance No. 2393-66 (Section 115.1901) and enjoined the city of Cleveland from canceling income tax reciprocity.

The city of Cleveland instituted this appeal.

There is no dispute that Cleveland can enact and amend its income tax ordinance with or without reciprocity. It is the timing of such amendment that is in issue. Simply stated, the issue in this case is whether the city of Cleveland must first withdraw from the Central Collection Agency before it can amend its income tax ordinance eliminating reciprocity. Plaintiffs appellees argue that the city of Cleveland must terminate its membership in the Central Collection Agency in accordance with the terms of the agreement before it can amend its ordinance. The city of Cleveland contends it can amend its ordinance at any time because there is no restriction in Ordinance No. 2393-66 or in the Central Collection Agency Agreement against the city of Cleveland amending its ordinance. It can amend its ordinance, eliminate reciprocity and still belong to the Central Collection Agency under the terms of the agreement. The city argues that there is no language contained in either Ordinance No. 2393-66 or the agreement prohibiting it from amending its ordinance if it complies with the requirements of its Charter.

It is noted that this case is only concerned with the period from October 1, 1970, the effective date of Ordinance 1437-70, and December 31, 1971, because the city of Cleveland, as a precautionary measure, gave notice on February 8, 1971, pursuant to Article IX of the Central Collection Agency Agreement that it was withdrawing from the Central Collection Agency effective December 31, 1971.

This case can be decided by reviewing and interpreting the plain and unambiguous language of Ordinance No. 2393-66, the income tax ordinance of the city of Cleveland and the Central Collection Agency Agreement, and it is not necessary to speculate upon, infer, or assume the intent of the parties.

Cleveland is a chartered municipal corporation which can enact and amend municipal income tax legislation with

or without reciprocity provisions if such legislation is not in conflict with the Ohio Constitution, general law or the Cleveland City Charter. Article XIII, Section 6, Article XVIII, Sections 3, 7, 13, Ohio Constitution, Chapter 718, Revised Code. Further, Ordinance No. 2393-66 did not require that the city of Cleveland maintain reciprocity for any definite period of time, nor did it contain language limiting or prohibiting Cleveland City Council from amendng its income tax ordinance. Also, Cleveland City Council did not, either by ordinance or resolution, adopt or approve the Central Collection Agency Agreement.

It is clear that the city of Cleveland could amend its income tax ordinance and eliminate reciprocity at any time.

Further, there are no provisions in the Central Collection Agency agreement that could be interpreted as restricting, limiting or prohibiting the City of Cleveland from amending its income tax ordinance prior to withdrawal from the Central Collection Agency.

Any attempt to use the Central Collection Agency Agreement to restrict the power of Cleveland City Council to amend its income tax ordinance must fail. The agreement cannot control the legislative process of the city of Cleveland, and it is not necessary for Cleveland to withdraw from the Central Collection Agency before amending its ordinance eliminating reciprocity.

Article IX of the agreement is entitled ''Cancellation of Agreement'' and relates only to cancellation of the agreement, either by withdrawal after appropriate notice, or by repeal of the Cleveland city income tax ordinance. Article IX makes no reference to amendment of an income tax ordinance nor is there a prohibition against amendments. Article IX(A) provides in substance that any participant may withdraw from the Central Collection Agency and that such withdrawal can only be effective December 31 of any given year and must be preceded by a written notice of withdrawal not later than February 20 prior to the effective date of such withdrawal.

Article IX(B) provides that in the event the City of Cleveland should repeal its income tax ordinance it shall

continue to be bound by the provisions of the agreement for the four calendar quarters following the quarter in which said repeal shall become effective.

The city of Cleveland did not withdraw from the Central Collection Agency nor did it repeal its income tax ordinance, but only amended its income tax ordinance eliminating reciprocity. Attention is called to the fact that Section 115.2311 was not amended or repealed.

It is possible for Cleveland to amend its income tax ordinance eliminating reciprocity and still participate under the terms of the Central Collection Agency Agreement. Therefore, Article IX dealing with cancellation of the agreement does not control under the facts in this case.

It cannot be effectively argued that the principal purpose of the agreement is reciprocity and when reciprocity ends the agreement is terminated. Such language is not contained in the agreement.

If such a result had been intended it could have been spelled out either in Ordinance 2393-66 or the agreement, or Cleveland City Council could have passed an ordinance or resolution approving the agreement.

The agreement has several references to reciprocity; one in the Preamble and one in Article II(B). However, these are not controlling because the argreement can be operative without reciprocity. Further, there is no provision in the agreement stating that a municipality must have reciprocity; that it cannot amend its ordinance and eliminate reciprocity; that it must withdraw from the Central Collection Agency before it amends its ordinance; or that when a municipality eliminates reciprocity the agreement is terminated.

For the foregoing reasons the city of Cleveland's motion for summary judgment should have been granted.