KARDOLRAC INDUSTRIES, CORP., Plaintiff-Appellant, v. WANG LABO-RATORIES, INC., Defendant-Appellee.

First District (2nd Division)   Nos. 84—2043, 84—2116 cons.

Opinion filed August 6, 1985.

Allan Horwich and Michael Brody, both of Schiff, Hardin & Waite, of Chicago, for appellant.

Joan M. Hall and Robert T. Markowski, both of Jenner & Block, of Chicago (Marvin Schwartz, Garrard R. Beeney, and Sullivan & Cromwell, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

The circuit court entered summary judgment for defendant in an action brought by plaintiff debenture holder to recover for accrued interest allegedly owing on debentures issued by defendant. Plaintiff appeals, raising the issue of whether the debenture indenture authorizes the payment of accrued interest to debenture holders who, in the face of defendant's redemption call, converted their debentures to common stock after the record date but before the interest payment date.

Pursuant to an indenture (Indenture) dated December 1, 1980, between defendant and the Chase Manhattan Bank, as trustee, defendant issued $100,000,000 aggregate principal amount of $9\frac{1}{2}\%$ convertible subordinated debentures (Debentures) due December 1, 2005. Plaintiff subsequently purchased Debentures in the principal amount of $1,013,000.

On April 26, 1983, defendant issued a notice of redemption advising debenture holders that defendant would redeem all outstanding Debentures as of the close of business on May 26, 1983. Between May 15 and May 26, 1983, plaintiff converted its Debentures into 40,520 shares of class B common stock of defendant corporation.

On October 17, 1983, plaintiff filed a class action complaint on behalf of itself and "all persons who were beneficial holders of the Debentures as of the close of business on May 15, 1983, and who converted their debentures prior to the close of business on May 26, 1983." The class members were alleged to be entitled to receive accrued interest on the Debentures through May 26, 1983, and defendant's refusal to pay this interest was an alleged breach of the Indenture.

Defendant petitioned to remove the case to Federal district court on November 14, 1983. On December 19, 1983, while the case was in district court, defendant filed a motion for summary judgment, which was fully briefed by both parties. The district court, however, remanded the action on plaintiff's motion back to the circuit court of Cook County on April 13, 1984.

On June 5, 1984, in the circuit court, defendant renewed its earlier Federal court motion for summary judgment, which the circuit court granted on July 18, 1984. Plaintiff's timely appeal followed.

Plaintiff challenges the summary judgment on the grounds that the Indenture authorized payment of accrued interest on the Debentures to debenture holders who, in the face of an imminent redemption by defendant, converted their Debentures into corporate stock during the period between the record and the interest payment dates.

■ A debenture indenture is essentially a contract, the interpretation of which involves the application of contract law principles. (See,

*e.g., Broad v. Rockwell International Corp.* (5th Cir. 1981), 642 F.2d 929, 946-48, *cert. denied* (1981), 454 U.S. 965.) Because the Indenture specified that it "shall be governed by and construed in accordance with the laws of the State of New York," we accept that statement as the parties' intent and shall apply New York law in our analysis. *Hofeld v. Nationwide Life Insurance Co.* (1975), 59 Ill. 2d 522, 529, 322 N.E.2d 454.

A debenture indenture must be viewed as a whole, and all its parts reconciled, if possible, to avoid inconsistency. (*National Conversion Corp. v. Cedar Building Corp.* (1969), 23 N.Y.2d 621, 625-26, 246 N.E.2d 351, 354, 298 N.Y.S.2d 499, 502.) The words of the indenture should be given their plain meaning and should not be interpreted in such a way as to render a provision without force and effect. (*Laba v. Carey* (1971), 29 N.Y.2d 302, 308, 277 N.E.2d 641, 644, 327 N.Y.S.2d 613, 618.) A term should not be rewritten by "interpretation" when it is clear and unambiguous on its face. (*Fiore v. Fiore* (1979), 46 N.Y.2d 971, 973, 389 N.E.2d 138, 139, 415 N.Y.S.2d 826, 826.) Where a term is susceptible of two possible and reasonable interpretations, that interpretation which best accords with the remainder of the instrument will be chosen. *Broad v. Rockwell International Corp.* (5th Cir. 1981), 642 F.2d 929, 947 (construing New York law).

■ The Indenture provides for the semiannual payment of accrued interest on the interest payment dates of June 1 and December 1 of each year, "until the principal thereof is paid or duly provided for." The person in whose name the Debenture is registered at the close of business on the regular record date, the May 15 or November 15 immediately preceding the respective interest payment date, is entitled to payable interest.

Defendant is provided with the right to redeem all or a portion of the Debentures at its election prior to maturity, upon giving notice to debenture holders not less than 30 nor more than 60 days prior to the redemption date. The price paid by defendant to redeem the Debentures includes the principal amount, the premium, if any, and interest accrued to the redemption date. All Debentures redeemed or converted into stock are to be delivered to the trustee "and shall be promptly cancelled."

Section 1301 of the Indenture provides that debenture holders may convert their Debentures into shares of class B common stock at any time prior to the December 1, 2005, maturity date, or, if called for redemption, before the redemption date. Section 1302, which defines the manner in which the conversion privilege may be exercised, provides that:

"Debentures so surrendered during the period from the close of business on the Regular Record Date preceding an Interest Payment Date to the opening of business on such Interest Payment Date shall (unless any such Debentures or the portion thereof being converted shall have been called for redemption on a date after such Regular Record Date and before such Interest Payment Date) also be accompanied by payment in New York Clearing House funds or other funds acceptable to the Company of an amount equal to the interest payable on such Interest Payment Date ***."

Defendant correctly argues that this language suggests that the record date is merely a device for identifying the recipients of interest payable on the interest payment date, the actual vesting occasion. Interpreting similar provisions based on the American Bar Foundation's model debenture indenture, as contained in American Bar Foundation, Commentaries on Model Debenture Indenture Provisions 1965, Model Debenture Indenture Provisions All Registered Issues 1967, and Certain Negotiable Provisions (1971) (Commentaries), upon which the Indenture is also patterned, reviewing courts have concluded that a debenture holder's election to convert its debentures called for redemption prior to the interest payment date extinguished the issuing company's obligation to pay accrued interest. See *Tandy Corp. v. United States* (5th Cir. 1980), 626 F.2d 1186, 1191; *Columbia Gas System, Inc. v. United States* (2d Cir. 1973), 473 F.2d 1244, 1249-50; *Husky Oil Co. v. Commissioner* (1984), 83 T.C. 717, 735.

Conceding that defendant's obligation to pay accrued interest would have been discharged had it not called the Debentures for redemption, plaintiff urges that the Indenture carved an exception for "involuntary" conversions occurring between the regular record date and the interest payment date, where the Debentures have been called for redemption. Plaintiff contends that this exception is created by the "unless" parenthetical clause in the above-quoted portion of section 1302, exempting from the reimbursement requirement debenture holders converting before a redemption date which, as here, precedes an interest payment date; moreover, if a pre-interest payment date redemption extinguished defendant's obligation to pay interest, as the circuit court found, the "unless" clause would be meaningless.

Plaintiff's contentions must be rejected. The Commentaries propose two alternative versions of section 1302. One, essentially adopted in the Indenture, requires converting debenture holders to reimburse the issuing company for six months' interest. The other, requiring no such reimbursement, would affirmatively provide interest to debenture

holders converting between the record and interest payment dates. (Commentaries 539.) No such provision is contained in the Indenture.

Moreover, the Commentaries discuss the manner in which the first version, if selected, should be qualified:

"A holder converting after a record date but prior to an interest payment date must be required to pay an amount equivalent to six-months' interest as a condition to conversion. Such funds would be used to offset payment to the 'record' holder of the obligation. This provision should be qualified to require no such payment if the obligation converted has been called for payment on a date *prior to* the payment date."

(Commentaries, app. D, at 3.) (Emphasis in original.) Thus, because defendant chose to require repayment of the interest payment by converting debenture holders, it was necessary for it to exempt expressly such repayment where, as here, redemption was to take place before the interest payment date and thereby discharge its obligation to pay interest. Otherwise, debenture holders such as plaintiff here would be required to pay to defendant the interest accrued despite the fact that no interest would be forthcoming on the interest payment date. The "unless" clause, under this analysis, is far from "unnecessary" or "meaningless," as plaintiff suggests.

This interpretation is consistent with the final sentence of section 1302: "Subject to the foregoing, no adjustment shall be made for interest accrued on any Debenture that shall be converted or for dividends or any shares of Class B Common Stock that shall be delivered upon the conversion of such Debenture." This provides that the manner of exercising the conversion privilege, as it affects the interest payments or the dividends received, is to be governed by the terms of section 1302. Plaintiff, however, argues that the absence of the terms "no payment or" before "no adjustment," present in the model indenture, creates an ambiguity which should be resolved to require defendant to pay interest to plaintiff. In the context of the remainder of section 1302, we find no such ambiguity.

Plaintiff also bases its challenge of the circuit court's construction of the Indenture on the overriding rights purportedly afforded debenture holders by section 508, which provides:

"Notwithstanding any other provision in this Indenture, the Holder of any Debenture shall have the right which is absolute and unconditional to receive payment of the principal of (and premium, if any) and (subject to Section 307) interest on such Debenture on the respective Stated Maturities expressed in such Debenture * * *."

Section 307, in turn, provides:

"Interest on any Debenture which is payable, and is punctually paid, on any Interest Payment Date shall be paid to the Person in whose name that Debenture *** is registered at the close of business on the Regular Record Date for such interest."

Plaintiff urges that these sections, when read together, vest debenture holders as of the regular record date with an "absolute and unconditional" right to receive interest on the interest payment date. We disagree.

The principal function of section 508 is to assure the negotiability of the Debentures by making unconditional the promise to pay contained in them. (*Tandy Corp. v. United States* (5th Cir. 1980), 626 F.2d 1186, 1192; Commentaries, at 234.) Section 508 creates an unconditional right to interest on the "Stated Maturities," defined in section 101 as "the fixed date on which *** such instalment of interest is due and payable." Section 508 thus contains an unconditional promise to pay interest on the interest payment dates, not earlier. See *Tandy Corp. v. United States* (5th Cir. 1980), 626 F.2d 1186, 1192.

Moreover, the use of the qualifying phrase "which is payable" in section 307 renders this section only a mechanism for identifying potential interest recipients, rather than an independent source of the record holder's right to interest. For, if interest were *not* payable under other provisions of the Indenture, as in the instant situation, sections 307 and 508, even when read in conjunction, would not override such other provisions. Section 508 assures only that interest which *is* payable is payable without condition to those holders identified under section 307.

Plaintiff also analogizes the instant situation to those involving stock dividends, which vest in the stockholders on the date of the dividend declaration or on a designated record date, regardless of when the dividends are actually paid. (See 11 W. Fletcher, Cyclopedia of the Law of Private Corporations secs. 5322, 5377, 5380 (perm. ed. 1971); Note, *When Do Dividends Vest?* 27 Geo. L. J. 74, 75-76 (1938).) Plaintiff's analogy is misplaced. The Commentaries, at page 189, characterize the record date mechanism as a necessary means of addressing the "almost insoluble mechanical problem" engendered by the large volume of debentures in modern issues of such securities. The purchaser of a debenture between the record and payment dates is considered the "owner" of the full interest installment, which he expects to receive from the seller—who, in turn, will receive it from the obligor corporation—by means of a "due bill" or other obligation given at the time of settlement. Commentaries 190.

Finally, as the circuit court found here, the "purely mechanical function" of the record date device is demonstrated by section 1302, which requires reimbursement of interest to the corporation by debenture holders converting between the record date and the payment date. If the record date were indeed the vesting occasion, section 1302 would have to be seen as some sort of divesting mechanism. The simpler and more consistent view would be to regard the record date as a point of identification, with vesting taking place on the interest payment date.

Plaintiff's readings of section 508 and 1302 are also inconsistent. While maintaining that section 508 unconditionally creates a vested right to interest on the record date, "[n]otwithstanding any other provision," plaintiff acknowledges that section 1302 requires repayment of interest from debenture holders in certain situations. If section 508 did cause the interest right to vest on the record date, as plaintiff contends, there would be no need for plaintiff to attempt to carve an exception to the repayment requirement for debenture holders converting in the face of a redemption call, as *any* reimbursement required by section 1302 would be negated by section 508's "notwithstanding" language.

Summary judgment is a drastic remedy appropriately granted only where the moving party has a right to judgment as a matter of law and its right thereto is clear and free from doubt. (*In re Estate of Garbalinski* (1983), 120 Ill. App. 3d 767, 770, 458 N.E.2d 1065; *Burks Drywall, Inc. v. Washington Bank & Trust Co.* (1982), 110 Ill. App. 3d 569, 575, 442 N.E.2d 648.) There is no dispute as to the relevant facts in the case *sub judice*, only as to the interpretation of the Indenture. Issues concerning the construction, interpretation, and legal effect of a contract are properly resolved by the circuit court as questions of law; further, these issues may be determined by a reviewing court independently of the circuit court's determination. (*Illinois Valley Asphalt, Inc. v. La Salle National Bank* (1977), 54 Ill. App. 3d 317, 319-20, 369 N.E.2d 525.) No reason appears in the present case to disturb the circuit court's entry of summary judgment for defendant based upon its sound and consistent reading of the Indenture.

For the reasons expressed herein, the judgment of the circuit court is affirmed.

Affirmed.

STAMOS, P.J., and PERLIN, J., concur.