**JAMIE SECURITIES CO., Plaintiff,**

v.

**THE LIMITED, INC., Defendant.**

**No. 86 Civ. 5259 (CSH).**

United States District Court, S.D. New York.

Feb. 24, 1988.

Skadden, Arps, Slate, Meagher & Flom, New York City, for plaintiff; Edwin E. McAmis, Jay S. Berke, William B. Korman, Richard S. Simon, of counsel.

Schwartz, Kelm, Warren & Rubenstein, Columbus, Ohio, for defendants; Russell A. Kelm, Daniel R. Swetnam, James J. Hagan, Simpson, Thacher & Bartlett, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This diversity case presents, on cross-motions for summary judgment, the question whether under the governing instruments an issuer of subordinated convertible debentures must pay interest to holders who converted their debentures between an interest record date and the subsequent interest payment date, in response to the issuer's redemption call falling within that "window of time."

### FACTS and BACKGROUND

Defendant The Limited, Inc. ("The Limited") is an Ohio corporation engaged in the purchase, distribution and sale of women's clothing. After appropriate filings, the Securities and Exchange Commission declared effective an amended registration The Limited filed on July 2, 1985, whereby The Limited proposed to issue convertible subordinated debentures in principal amount of $125,000,000.00 at the rate of 7½% per annum. The issuing underwriter was Lazard Freres & Co. ("Lazard"). The governing instruments are an Indenture and the Debenture which appears as Exhibit A to the Indenture.

Plaintiff Jamie Securities, Co. ("Jamie") is a New York limited partnership engaged in arbitrage and trading securities for its own account. On various dates in April, May and June, 1986, Jamie purchased substantial quantities of The Limited's debentures.

The debentures provided for optional and mandatory redemption by The Limited. I need not quote those provisions. Mandatory redemption is not involved. There is no dispute that The Limited had the right to

make the optional redemption call described below.

On June 12, 1986 The Limited mailed a Notice of Redemption whereby it called all outstanding debentures for redemption on June 30, 1986. The notice also advised debenture holders that the debentures might be converted, at the holder's option, through the close of business on June 27, 1986 into The Limited common stock at a conversion price of $20.916667 per share. That particular conversion price resulted from the operation of provisions in the governing documents which again are not in dispute.

The debentures provided for payment of interest semi-annually on January 1 and July 1 of each year to registered holders on the preceding December 15 or June 15. These earlier dates are referred to as "interest record dates"; the later dates as "interest payment dates"; and the interval between them as the "window of time." By redeeming the debentures on June 30, 1986, The Limited brought about a situation whereby the redemption date (and consequently the pre-redemption conversion date) fell within the window of time in respect of the semi-annual interest accruing between January 1 and July 1, 1986.

Because it profited them to do so, virtually all the debenture holders elected to convert their debentures into common stock, rather than tender their debentures for redemption.

The issue in the case is whether converting debenture holders who owned their debentures at the interest payment date of June 15, 1986 are entitled to interest from January 1. Upon The Limited's refusal to pay interest, Jamie commenced this action on its own behalf, and on behalf of a purported class consisting of "all persons or entities who were registered holders, the beneficial owners or assignees of registered holders of the Debentures as of the close of business on June 15, 1986, or who thereafter purchased or acquired the rights of such registered holders, beneficial owners or assignees of registered holders and who converted their Debentures as of the close of business on June 27, 1986." Complaint, ¶ 5.

The parties have by consent deferred the question of class certification under Rule 23, F.R.Civ.P., pending resolution of the cross-motions for summary judgment on liability.

## THE CONTRACTUAL PROVISIONS

Counsel for The Limited and for Lazard, the managing underwriter, collaborated on drafting the Indenture and Debenture. An Ohio firm represented The Limited. A New York City firm represented Lazard.

Discovery has revealed that for the most part, both firms in their drafting drew upon the Model Simplified Indenture ("MSI") prepared in the 1983 by the Section of Corporation, Banking and Business Law of the American Bar Association. The MSI and accompanying Notes are printed in 38 Bus.Law. 741–813 (1983).

On July 1, 1985, attorneys representing The Limited and Lazard found themselves in the offices of Corporate Printing, the financial printer for the offering. Final changes were being made to the Registration Statement, Prospectus, and Indenture, in anticipation of the documents becoming effective the following day.

In the drafts before counsel at that time, the Indenture read in pertinent part in Article 2:

"Section 2.11: *Cancellation.* The Company at any time may deliver Securities to the Trustee for cancellation. The Registrar, Paying Agent and Conversion Agent shall forward to the Trustee any Securities surrendered to them for registration of transfer, exchange, payment or conversion. The Trustee shall cancel all Securities surrendered for registration of transfer, exchange, payment, conversion or cancellation and shall dispose of cancelled Securities as the Company directs."

The Indenture also provided, in Article 10:

"Section 10.01. *Conversion Privilege.*

(a) A Holder of a Security may convert it into Common Stock at any time during

the period stated in paragraph 9 of the Securities. The number of shares issuable upon conversion of a Security is determined as follows: Divide the principal amount to be converted by the conversion price in effect on the conversion date. Round the result to the nearest $\frac{1}{100}$th of a share.

(b) The initial conversion price is stated in paragraph 9 of the Securities. The conversion price is subject to adjustment.

(c) A Holder may convert a portion of a Security if the portion is $1,000 or a whole multiple of $1,000. Provisions of this Indenture that apply to conversion of all of a Security also apply to conversion of a portion of it.

(d) 'Common Stock' means Common Stock of the Company as it exists on the date of this Indenture as originally signed.

Section 10.02 *Conversion Procedure.*

(a) To convert a Security a Holder must satisfy the requirements in paragraph 9 of the Securities. The date on which the Holder satisfies all those requirements is the conversion date. As soon as practical, the Company shall deliver through the Conversion Agent a certificate for the number of full shares of Common Stock issuable upon the conversion and a check for any fractional share. The person in whose name the certificate is registered shall be treated as a stockholder of record on and after the conversion date.

(b) No payment or adjustment will be made for accrued interest on a converted Security."

The Debenture provided in pertinent part:

"2. *Method of Payment.* The Company will pay interest on the Securities (except defaulted interest) to the persons who are registered holders of Securities (the 'Securityholders') at the close of business on the record date for the next interest payment date even though Securities are cancelled after the record date and on or before the interest payment date. Securityholders must surrender Securities to a Paying Agent to collect principal pay-

ments. The Company will pay principal and interest in money of the United States that at the time of payment is legal tender for payment of public and private debts. However, the Company may pay principal and interest by check payable in such money. It may mail an interest check to a Securityholder's registered address."

The Debenture also provided:

"9. *Conversion.* A Securityholder may convert Securities into Common Stock of the Company at any time before the close of business on July 1, 2010. If the Security is called for redemption, the Securityholder may convert it at any time before the close of business on the date prior to the redemption date. The initial conversion price is $31.375 per share, subject to adjustment in certain events as provided in the Indenture. To determine the number of shares issuable upon conversion of a Security, divide the principal amount to be converted by the conversion price in effect on the conversion date. On conversion no payment or adjustment for interest will be made. The Company will deliver a check for any fractional share."

As counsel for The Limited and Lazard contemplated this last-quoted provision in the Debenture, "a question was raised" about the payment of interest in the event the debentures were converted. That phrase appears in ¶ 4 of each of the affidavits of the Ohio firm's partner and the New York firm's associate. In an effort to deal with that "question", and after consulting several recent indentures for convertible debentures from the latter firm's files, counsel added a concluding sentence to the first paragraph of section 9 of the Debenture. That sentence reads:

"Securities surrendered for conversion during the period from the close of business on any record date for the payment of interest to the opening of business on such interest payment date shall (except in the case of Securities or portions thereof which have been called for redemption on a date which occurs within such period) be accompanied by payment

in New York Clearing House funds or other funds acceptable to the Company of any amount equal to the interest payable on such interest date on the principal amount of the Securities being surrendered, provided, that no such payment need be made if there shall exist, at the time of conversion, a default in the payment of interest on the Securities."

The Indenture also provides that the Indenture and the Debentures will be governed by the laws of the State of Ohio. Article 12, Section 12.11.

## DISCUSSION

While Ohio law governs, and the parties cite Ohio appellate cases, those cases declare universal principles of contract construction which are of limited assistance. I take it to be universally perceived that, as here, the terms printed on the face of the Debenture, together with the Indenture incorporated by reference, constitute the contract between The Limited as Issuer and holders such as Jamie. *Morgan Stanley & Co. v. Archer Daniels Midland Co.*, 570 F.Supp. 1529, 1538–39 (S.D.N.Y.1983) (construing New York law). The issue at bar is one of construction of that particular contractual language. No cited Ohio case addresses it; nor does any reported case in this circuit cited by the parties or revealed by the Court's research.[1]

I agree with Judge Sand in *Morgan Stanley, supra*, at 1540–41 that "well-accepted and universal principles of contract construction [are] singularly unhelpful in construing" debentures and indentures. The "plain meaning" rule of construction does not dwell comfortably among such thickets of legal prose; "intent of the parties" is of limited usefulness where debenture holders do not participate in the drafting; even the *contra proferentem* rule, urged by plaintiff at bar, is of doubtful application where "it is not at all clear that [The Limited] would be considered the drafter of the Indenture, given the active

participation of the managing underwriter. Indeed it is arguable that the ambiguous language should be construed in favor of [the issuer]." *Morgan Stanley, supra*, at 1541."

I shall approach the problem by analyzing the particular language used in these particular instruments, viewed in the light of such "legislative history" as it seems appropriate to consider.

I begin by observing that "cancellation" of the debentures is a concept which includes "conversion", Indenture, Article 2, Section 2.11; and that the issuer is obligated to pay interest to registered holders "at the close of business on the record date for the next interest payment date even though Securities are cancelled after the record date and on or before the interest payment date." Debenture, Section 2. These provisions, standing alone, would appear to support plaintiff's position, since its debentures were "cancelled" (by the vehicle of conversion) after the record date (June 15) and before the interest payment date (July 1).

But The Limited relies upon Section 9 of the Debenture, one sentence of which provides: "On conversion no payment or adjustment for interest will be made." That sentence echoes the provision in Section 10.02(b) of the Indenture, which states: "No payment or adjustment will be made for accrued interest on a converted Security."

Defendant says that the quoted sentence from ¶ 9 of the Debenture cuts off a holder's right to interest under the circumstances presented. Its main brief argues (at 15): "It is difficult to conceive how the statement could be any clearer." However, that perfect clarity defendant now professes apparently eluded its counsel and counsel for Lazard when they were putting the final touches to the drafts at the printing house on July 1. As noted, the affidavits of the two attorneys concerned recite

---

**1.** The pleadings in *Elliott Associates v. J. Henry Schroder Bank & Trust Co.*, 655 F.Supp. 1281 (S.D.N.Y.1987), *aff'd*, 838 F.2d 66 (2d Cir., 1988), raised the issue. However, while he ruminated upon some of the considerations presented at

bar, Judge Sand did not find it necessary to decide the question, 655 F.Supp. 186–87; nor did the Court of Appeals in affirming his order. At 73.

that "a question was raised" about the very point at issue, namely, the issuer's obligation to pay interest in the event the debentures were converted. It is not clear from the affidavits whether that question was raised by a Celestial Voice, a printer's assistant, or one or another of the attorneys. Additional evidence on these events was developed in discovery, but I need not pursue the subject. It is sufficient to say that in an effort to clarify what was then perceived to be less than entirely clear, an additional sentence was included in the draft. That additional sentence appears at p. 748–749 *supra.* In order that its full text be before us, I now quote the first paragraph of the Debenture, ¶ 9, as it eventually emerged:

> "*Conversion.* A Securityholder may convert Securities into Common Stock of the Company at any time before the close of business on July 1, 2010. If the Security is called for redemption, the Securityholder may convert it at any time before the close of business on the day prior to the redemption date. The initial conversion price is $31.375 per share, subject to adjustment in certain events as provided in the Indenture. To determine the number of shares issuable upon conversion of a Security, divide the principal amount to be converted by the conversion price in effect on the conversion date. On conversion no payment or adjustment for interest will be made. The Company will deliver a check for any fractional share. Securities surrendered for conversion during the period from the close of business on any record date for the payment of interest to the opening of business on such interest payment date shall (except in the case of Securities or portions thereof which have been called for redemption on a date which occurs within such period) be accompanied by payment in New York Clearing House funds or other funds acceptable to the Company of any amount equal to the interest payable on such interest date on the principal amount of the Securities being surrendered, provided, that no such payment need be made if there shall exist, at the time of conversion, a default in the payment of interest on the Securities."

Whatever counsel's intent may have been, it is difficult to see how the last sentence of this paragraph deprives the present plaintiff of a right to interest. In the particular circumstances of this case, the general effect of the sentence is to require a holder surrendering his debentures for conversion to accompany that surrender by payment of an amount equal to the interest payable on the interest date. However, to that general provision there is a specific exception, contained in parentheses, which carves out of the general provision "the case of securities or portions thereof which have been called for redemption on a date which occurs within" the window of time. That is, of course, the case at bar.

Plaintiff's entitlement to interest on this particular conversion is enforced by the explanatory Notes to the MSI, the model followed by counsel for defendant issuer *and its managing underwriter. Such Notes or Commentaries constitute appropriate "legislative history" in respect of model instruments. Cf. Morgan Stanley, supra,* at 1535 (quoting the Commentaries to the American Bar Foundation's prior Model, dated 1977).[2]

The Introduction to the MSI refers to the passage of time since the publishing of the ABF models, and goes on to say:

> "In the accompanying notes, the provisions of the Model Simplified Indenture

---

**2.** Each party has submitted an affidavit of an individual who participated in the committee drafting the MSI. The Limited's affidavit is that of Morey W. McDaniel, Chief Finance Counsel to Union Carbide Corporation. Jamie's affidavit is that of J. Kirkland Grant, a law professor. McDaniel says that under MSI principles, the instruments at bar should be construed so as to bar interest. Grant says with equal vigor that interest must be paid. The Introduction to the MSI observes that "the substantive positions taken in this Model do not necessarily represent the views of the individual members of the Committee." 38 Bus.Law. 741 (1983). In these circumstances, I disregard the individual affidavits, and look only to the published Notes for "legislative history."

are often explained with a comparison to the ABF Model Indentures or with reference to relevant stock exchange listing requirements or prevailing administrative practice, and there are also included reminders of alternative approaches to the particular subject matter." 38 Bus. Law. 742 (footnotes omitted).

The Indenture at bar follows exactly the language of the first two paragraphs of Article 10 Section 10.02 of the MSI. 38 Bus.Law. at 764. The MSI Note to this section reads as follows:

"1. Adjustment for Interest on Conversion. Some indentures require a Securityholder converting between an interest record date and an interest payment date to return the accrued interest to the Company. The ABF Indenture Commentaries take no position on this subject, *and the Model Simplified Indenture takes the opposite position. See note 3 to the form of Security.* However, Securityholders converting, voluntarily or because of a well-timed call for redemption, prior to an interest record date lose all interest for the current interest period." *Id.* at 804 (emphasis added).

Note 3 to the Debenture, to which cross-reference is made in the Note just quoted, provides:

"Interest on Debentures Cancelled After The Interest Record Date. Paragraph 2 provides for payment of interest even though securities are cancelled after the interest record date and on or before the interest payment date. This situation arises (i) if Securities are called before an interest record date for redemption after the record date but before or on the interest payment date, or (ii) if Securities are converted after the record date but before or on the payment date."

The cumulative effect of these commentaries is clear enough. The MSI takes an "opposite position" from the ABF model requiring a "wash" interest payment by the converting holder to the issuer; and the Note to the form of security itself explicitly declare the holder's entitlement to interest in the circumstances of this case.

While during the midnight final drafting of the instruments counsel for The Limited and Lazard apparently became aware of the looming liability of the issuer for interest in the event of conversion, the additional sentence adopted to cut off that liability is not, for the reasons previously discussed, sufficient to the task.

Contrary to defendant's contention, this construction of the contract does not render meaningless that particular sentence upon which defendant relies. Viewing the instruments in their entirety, the sentence "[o]n conversion no payment or adjustment for interest will be made" means only that in the mathematical process of conversion, that is, dividing the principal amount to be converted by the effective conversion price, accrued interest is to be excluded. It was excluded in the case at bar.

Urging the benefits of uniformity in commercial affairs, The Limited argues that a contrary result is required by *Tandy Corporation v. United States,* 626 F.2d 1186 (5th Cir.1980), and *Kardolrac Industries Corp. v. Wang Laboratories, Inc.,* 135 Ill. App.3d 919, 90 Ill.Dec. 567, 482 N.E.2d 386 (1st District, 2nd Division 1985). I do not agree.

*Tandy* was a tax case in which the Fifth Circuit held that the corporate issuer of convertible debentures could not deduct from income accrued interest and bond premiums that would have been payable to holders of its convertible debentures called for redemption, if such holders had not converted such debentures into common stock prior to the redemption date. I do not accept Jamie's suggestion that *Tandy* is entirely distinguishable because it involved the issuer's tax liability, not its liability to a converting debenture holder; the Fifth Circuit's analysis focuses upon the issuer's liability to pay interest. 626 F.2d at 1188–89. However, it appears from the recitation of facts, *id.* at 1187–88, that the converting debenture holders surrendered their shares prior to the record date, so no "window of time" entitlement issue arose. In any event, the controlling provisions in the *Tandy* indenture are significantly dif-

ferent from the instruments at bar. *See* Section 307 at 626 F.2d 1197.

Similarly, the instruments in *Kardolrac* did not provide, as the MSI-derived language in the case at bar does provide, that debenture holders on the record date are entitled to the payment of accrued interest "even though securities are cancelled after the record date and on or before the interest payment date." Debenture at ¶ 2. Cancellation, as I have noted, includes conversion.

Accordingly, in finding for the plaintiff in this case I do no violence to commercial uniformity. On the contrary, I enforce as written and intended a Model Simplified Indenture whose purpose is to achieve precisely that uniformity. Defendant's difficulty is that the "midnight" language drafted in an effort to avoid the clear effect of the selected model does not, by its own terms, apply to the circumstances at bar.[3]

## CONCLUSION

For the foregoing reasons, plaintiff's cross-motion for summary judgment on liability is granted. Defendant's cross-motion is denied.

Counsel for plaintiff are directed to settle judgement in conformity with this Opinion on seven (7) days' notice. Counsel may consider whether the judgment will be appealable. If it is not, then I would favorably consider a request that the question be certified for interlocutory appeal under 28 U.S.C. § 1292(b). Counsel may address those issues in further memoranda at the time the judgment is settled.

No present view is intimated on class certification. If no appeal, interlocutory or otherwise, is pursued at this time, a status conference will be scheduled to consider the issue of class certification.

It is SO ORDERED.

---

**3.** The parties' briefs raise other points of claim and of defense, but in the view I take of the case, particularly the contractual language, I need not reach them.