**JAMIE SECURITIES CO.,**
**Plaintiff–Appellee,**

v.

**THE LIMITED, INC.,**
**Defendant–Appellant.**

**No. 484, Docket 88–7593.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 16, 1988.

Decided July 27, 1989.

Edwin E. McAmis, New York City (Jay S. Berke and Robert S. Matlin, Skadden, Arps, Slate, Meagher & Flom, New York City, of counsel), for plaintiff-appellee.

James J. Hagan, New York City (Michael J. Chepiga, Jonathan Rosenberg and Michael J. Crane, Simpson Thacher & Bartlett, New York City, of counsel), for defendant-appellant.

Before MESKILL, KEARSE and MINER, Circuit Judges.

MINER, Circuit Judge:

This is an appeal from a summary judgment entered in the United States District Court for the Southern District of New York (Haight, J.) in favor of plaintiff-appellee, Jamie Securities Co. ("Jamie"), on the issue of the liability of defendant-appellant, The Limited, Inc. ("The Limited"), for interest on debentures converted to common stock. Jamie claims that it is entitled to accrued interest, in accordance with the terms of the Debenture and of the Indenture entered into between Jamie and the Trustee for the debenture holders, because the conversion occurred between the interest record date and the interest payment date. Jamie had elected to convert its Securities following a call for redemption that fixed a redemption date falling within the same interval of time. The Limited, issuer of the Securities, contends that the governing instruments make no provision for the payment of accrued interest in the event of conversion after a call for redemption.

Relying on various provisions of the governing instruments, including the Indenture provision for cancellation of surrendered debentures in the event of conversion, and the Debenture provision declaring cancellation of the Securities after the interest record date and before the interest payment date no bar to the payment of interest to those who were registered holders on the record date, the District Court found sufficient grounds for the award of accrued interest to Jamie. *See Jamie Securities Co. v. The Limited, Inc.*, 682 F.Supp. 746 (S.D.N.Y.1988). We read the provisions relied upon by the District Court differently and find that the Indenture and Debenture terms, taken as a whole, unambiguously preclude the payment of any interest on the debentures converted by Jamie. Accordingly, we reverse the judgment entered in favor of plaintiff and certified to this Court for interlocutory review, and remand the matter for entry of final judgment in favor of The Limited.

## BACKGROUND

The Limited, a Delaware corporation with its principal place of business in Ohio, is engaged in the purchase, distribution and sale of women's apparel. Proposing to issue convertible, subordinated debentures to finance the expansion of distribution facilities, it filed a Registration Statement under the Securities Act of 1933 with the Securities and Exchange Commission ("SEC") on June 19, 1985. Also filed were the forms of Indenture and Debenture to be employed as the governing instruments for the issue. After an amendment to the Registration Statement was filed on July 2, 1985, the SEC declared the Statement effective as amended. In accordance with the approved registration, The Limited on July 10, 1985 issued debentures in the principal amount of $125 million, bearing interest at 7½% per annum and due on July 1, 2010.

According to the terms of the Debenture, interest payments were to be made semi-annually, on the first days of January and July in each year, the first interest payment date being January 1, 1986. As is common in large, widely-distributed securities issues, a record date was established to simplify the duties of the Trustee obligated to make the interest payments. In this case, the Debenture specified that holders of record on December 15 in each year

would receive the January 1 payments, and holders of record on June 15 would receive the July 1 payments.

The Limited reserved the right at any time to redeem, at specific redemption prices plus interest accrued to the date of redemption, any part or all of the Securities issued. The governing instruments provided that "[o]nce notice of redemption is mailed, Securities called for redemption become due and payable on the redemption date at the redemption price," Indenture § 3.04, and "[o]n and after the redemption date interest ceases to accrue on Securities or portions of them called for redemption," Debenture ¶ 8.

Holders of the Securities were afforded the privilege of converting the Securities to common stock at any time prior to the expiration of the issue or, in the event of a redemption call, at any time prior to the close of business on the day preceding the redemption date. The initial conversion price was specified in the Debenture, subject to adjustment as provided in the Indenture. Included in paragraph 9 of the Debenture, entitled *Conversion*, was the following:

> To determine the number of shares issuable upon conversion of a Security, divide the principal amount to be converted by the conversion price in effect on the conversion date. On conversion no payment or adjustment for interest will be made. The [Limited] will deliver a check for any fractional share. Securities surrendered for conversion during the period from the close of business on any record date for the payment of interest to the opening of business on such interest payment date shall (except in the case of Securities or portions thereof which have been called for redemption on a date which occurs within such period) be accompanied by payment ... of any amount equal to the interest payable on such interest date on the principal amount of the Securities being surrendered....

Tracking one of the provisions in paragraph 9, subdivision (b) of Section 10.02 of the Indenture (*Conversion Procedure*) declares: "No payment or adjustment will be made for accrued interest on a converted Security." Section 12.11 of the Indenture provides: "The laws of the State of Ohio shall govern this Indenture and the Securities."

On June 12, 1986, less than one year after issuance of the Securities, The Limited gave notice by mail for the redemption of all outstanding debentures on June 30, 1986. The notice provided for a redemption price of $1,075 plus accrued interest to the date of redemption of $37.29, for a total of $1,112.29 per $1,000 in principal amount of debentures. The notice also advised debenture holders of their right to convert their debentures into common stock of The Limited, through the close of business on June 27, 1986, at a conversion price of $20.916667 per share. By June 27, the market price of the stock was approximately $33 per share, allowing those who elected to convert to receive $1,601.59 worth of stock for each $1,000 in principal amount of debentures. As is apparent, conversion would save The Limited the large outlays of cash required for redemption while providing a substantial benefit to those electing to take the stock. Not unexpectedly, virtually all debenture holders preferred conversion to redemption. Among those holders was Jamie, a company then engaged in arbitrage and trading securities for its own account. Between June 23 and June 27, 1986, Jamie converted to common stock debentures having a principal value of $25,715,000.

The refusal of The Limited to pay interest on the debentures converted by Jamie gives rise to this lawsuit. In its class action complaint, filed on July 2, 1986, Jamie alleges that The Limited "has persisted in its refusal to pay interest notwithstanding the contractual right to such interest which is expressly provided in [paragraphs] 2 and 9 of the Debenture and Section 2.11 of the Indenture." In its prayer for relief, Jamie therefore claims damages "which shall be the dollar amount of interest due on Debentures formerly held by Plaintiff and each other class member, for the period January 1, 1986 through and including the redemption date, June 30, 1986, together with interest on such unpaid amounts."

Following discovery proceedings, both parties moved for summary judgment. By consent, the question of class certification, Fed.R.Civ.P. 23, was deferred pending resolution of the cross-motions on the issue of liability. In its Memorandum Opinion and Order dated February 24, 1988 granting summary judgment to Jamie, the District Court determined that such rules of construction as "plain meaning," "intent of the parties," and *contra proferentem* were of limited usefulness in interpreting the governing instruments in this case. 682 F.Supp. at 749. Accordingly, the District Court "approach[ed] the problem by analyzing the particular language used in these particular instruments, viewed in the light of such 'legislative history' as it seems appropriate to consider." *Id.* The "legislative history" to which the court referred is comprised of the Notes or Commentaries to the Model Simplified Indenture ("MSI"), a form of Indenture prepared by the Section of Corporation, Banking and Business Law of the American Bar Association and relied upon for the most part by the drafters of the Indenture in the case at bar. *See id.* at 750–51.

The District Court first "observ[ed] that 'cancellation' of the debentures is a concept which includes 'conversion,'" according to Section 2.11 of the Indenture, and that interest must be paid to those who held debentures on the record date despite cancellation after that date and before the payment date, according to paragraph 2 of the Debenture. *Id.* at 749. The Court concluded that "[t]hese provisions, standing alone, would appear to support plaintiff's position, since its debentures were 'cancelled' (by the vehicle of conversion) after the record date (June 15) and before the interest payment date (July 1)." *Id.* The Court found support for that conclusion in Form of Security Note 3 to the MSI. *See id.* at 751.

Recognizing The Limited's heavy reliance on the specific provisions of paragraph 9 of the Debenture and Section 10 of the Indenture denying the payment of interest on conversion, the District Court undertook a detailed analysis of the Debenture provision. Paragraph 9 not only pro-

vides that no payment or adjustment of interest will be made upon conversion; it also includes the so-called "wash" clause, added by counsel when the final drafts of the governing instruments were being prepared at the printing house. The "wash" clause requires that Securities surrendered for conversion between the record date and the payment date be accompanied by funds representing interest due on the payment date, *except* in the case of Securities called for redemption during that interval. According to the District Court, the "wash" clause exception, applicable in the case at bar, does not negate Jamie's entitlement to interest. The Court noted that Section 10.-02 of the MSI served as a model for Section 10.02 of the Indenture here and a Note to that MSI section indicates that, even without a "wash" clause, no interest need be returned by a Security holder converting during the record date-payment date interval. *See id.*

Rejected by the District Court was The Limited's contention that the provisions denying liability for interest on conversion would be rendered meaningless by Jamie's interpretation of the governing instruments. The Court considered those provisions to "mean[ ] only that in the mathematical process of conversion, that is, dividing the principal amount to be converted by the effective conversion price, accrued interest is to be excluded." *Id.* This view presumably is bolstered by the fact that the no-payment sentence in paragraph 9 is preceded immediately by the sentence: "To determine the number of shares issuable upon conversion of a Security, divide the principal amount to be converted by the conversion price...."

By order dated June 10, 1988, the District Court certified its summary judgment for interlocutory appeal, *see* 28 U.S.C. § 1292(b), declaring that the summary judgment decision involved a controlling question of law as to which there is a substantial ground for difference of opinion and that immediate appeal may materially advance the ultimate termination of the litigation. The controlling question of law was said to be the following:

Whether under the governing instruments an issuer of subordinated convertible debentures must pay interest to holders who converted their debentures between an interest record date and the subsequent interest payment date, in response to the issuer's redemption call falling within that "window of time"....

This Court accepted the appeal by order entered July 18, 1988.

## DISCUSSION

It is a well-established rule in this Circuit that the "[i]nterpretation of [I]ndenture provisions is a matter of basic contract law." *Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*, 691 F.2d 1039, 1049 (2d Cir.1982), *cert. denied*, 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 482 (1983). The contract law of Ohio governs the interpretation of both the Indenture provisions and the Debenture terms in this case. According to Ohio law, contract language must be accorded its plain, ordinary and usual meaning, *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146, 150 (1978), and there is no need for a court to consider extrinsic evidence of meaning when the language is clear, *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271, 273–74 (1984) (per curiam). The contract must be examined in its entirety to ensure a valid interpretation. *City of Aurora v. City of Bay Village*, 27 Ohio App.2d 17, 272 N.E.2d 175, 178 (1971). The Fifth Circuit has observed that, "[a]s a matter of law, be it the law of New York or any other jurisdiction with which we are acquainted, the Indenture either is or is not ambiguous. It either does or does not adequately demonstrate the intent of the parties from its own four corners." *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 948 (5th Cir.), *cert. denied*, 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981).

Since the Debenture terms and the Indenture provisions are clear and unambiguous when examined as a whole, we find no need to resort to extrinsic evidence to aid in our interpretation here. By according the words of the governing instruments their plain, ordinary and usual meanings, we think that the intent of the drafters can be gleaned from the four corners of the instruments. The intent demonstrated by the language employed is to bar the payment of interest on debentures converted after The Limited's redemption call. Our examination begins with the terms and provisions that appear to bar the payment of any interest after conversion, regardless of the time of conversion: "No payment or adjustment will be made for accrued interest on a converted Security," Indenture § 10.02(b), and "On conversion no payment or adjustment for interest will be made," Debenture ¶ 9. Such language ordinarily means that converting debenture holders "will not receive any money payment or credit or any consideration other than the shares of stock ... whether [they] convert[ ] immediately after an interest payment or immediately before an interest payment." *Columbia Gas System, Inc. v. United States*, 334 F.Supp. 1279, 1281 (S.D. N.Y.1971), *aff'd*, 473 F.2d 1244 (2d Cir. 1973).

Qualifying the unequivocal prohibitions on payment of any interest after conversion are the terms of paragraph 2 of the Debenture ("The [Limited] will pay interest on the Securities ... to the ... holders of Securities ... at the close of business on the record date for the next interest payment date even though Securities are cancelled after the record date and on or before the interest payment date"), read in conjunction with the provisions of Section 2.11 of the Indenture ("The Trustee shall cancel all Securities surrendered for registration of transfer, exchange, payment, conversion or cancellation"). It appears from an isolated examination of the qualifying language that the no-payment-on-conversion provisions are applicable only to conversions occurring before the record date and that interest must be paid to any converting debenture holders who convert their Securities after the record date and before the payment date. *See* Restatement of Contracts § 236(c) (1932) ("Where there is an inconsistency between general provisions and specific provisions, the specific provisions ordinarily qualify the meaning

of the general provisions"); *see also* Restatement (Second) of Contracts § 203(c) (1981). For the reasons that follow, however, interest payments on Securities converted during the record date-payment date interval need not be made if a notice to redeem is given, as it was here, prior to the record date.

The notice of redemption of the entire issue in this case, mailed on June 12, 1986, served to extinguish all interest record dates and interest payment dates after June 12, since "Securities called for redemption become due and payable on the redemption date at the redemption price," Indenture § 3.04, and the only interest payable after the call is "accrued interest to the redemption date," Debenture ¶ 5(a). The Paying Agent was obliged to pay accrued interest, after the redemption call, to those who surrendered their Securities for redemption ("Securities called for redemption must be surrendered to the Paying Agent," Indenture § 3.03(b)(7), for payment of "the redemption price · of and accrued interest on all Securities to be redeemed," Indenture § 3.05), and not to those who merely continued to hold the called debentures through the interest record date. There was no provision in either the Indenture or the Debenture allowing Jamie to recover accrued interest upon conversion after the notice to redeem was served. The obligation to pay interest on the surrendered debentures had been eliminated by the redemption call, and the plain language of the governing instruments specifically provided that no interest would be paid on conversion under those circumstances, *see Tandy Corp. v. United States*, 626 F.2d 1186, 1191 (5th Cir.1980). The requirement that interest be paid to record date holders of Securities surrendered for cancellation on conversion, upon which Jamie fastens, simply has no application in the face of a call for redemption that pre-dated, and served to nullify, the record date.

Jamie would have us interpret the bar to interest payment on conversion, in the words of the District Court, to "mean[ ] only that in the mathematical process of conversion, that is, dividing the principal amount to be converted by the effective conversion price, accrued interest is to be excluded." 682 F.Supp. at 751. Since interest was excluded in the mathematical process referred to, both Jamie and the District Court concluded that there was full compliance with the interest bar clause. Apparently lending support to the foregoing interpretation is that fact that, in paragraph 9 of the Debenture, the clause in question is preceded by the formula for determining the number of shares issuable upon conversion ("divide the principal amount to be converted by the conversion price"). We note, however, that the no-interest-payment clause in the Indenture does not appear in a similar context. In any event, we do not consider the provisions denying interest in the event of conversion as a caution relating to the mathematical determination of the number of shares to be issued. To us, the words "no payment" in both the Indenture and Debenture clearly establish that no interest is to be paid on a converted debenture. It is significant, moreover, that the formula for redemption includes a specific provision for the payment of accrued interest, while the formula for stock issuance on conversion includes no interest provision. The bar to the payment of interest on a *"converted security,"* Indenture § 10.02 (emphasis added), unambiguously denies the Securityholder the right to collect interest once conversion has occurred. The only exception, under the qualifying language referred to above, is the situation involving conversion between the record date and the payment date without a prior call for redemption.

There remains for discussion the "wash" clause and its exception, found at paragraph 9 of the Debenture. The clause was added at an eleventh hour meeting held at the printer's office for the finalization of documents relating to the offering. The meeting was attended by an attorney representing The Limited and an attorney representing the underwriter, Lazard Frères & Co., and by several others. The attorneys decided to add the clause in question "to make certain that interest would not be

paid on conversion even if conversion occurred after a record date and before the following interest payment date." The language apparently was taken from some forms in the possession of the attorneys, but not from the MSI, the principal model being used.

As with much that is drafted by a committee for the purpose of "clarifying the situation" at the eleventh hour, the "wash" clause creates more problems than it solves. It provides that interest due on the payment date must be reimbursed to The Limited upon the surrender of securities for conversion during the record date-payment date interval. Thus it seems to conflict with the provisions for payment of interest to Securityholders who convert in a non-redemption situation during the record date-payment date interval. The "wash" clause appears to take away what is given by those provisions, but we choose to square the matter with a plain reading—the interest must be paid to record date holders, but it also must be returned on a conversion occurring during the interval. A resolution of that apparent conflict is not necessary for our purposes, however. The "wash" provision includes an exception that relieves Securityholders who convert during the record date-payment date interval from the obligation to reimburse interest when there is a call for redemption fixing a redemption date falling within the same interval. That exception, at least, is consistent with the elimination of all interest record and payment dates by virtue of the redemption call and the consequent exoneration of The Limited from liability for any interest other than accrued interest due upon redemption. *See Kardolrac Industries Corp. v. Wang Laboratories, Inc.,* 135 Ill.App.3d 919, 90 Ill.Dec. 567, 570, 482 N.E.2d 386, 389 (1985).

## CONCLUSION

The judgment of the District Court is reversed, and the matter is remanded for the entry of judgment dismissing the complaint.

KEARSE, Circuit Judge, dissenting:

I respectfully dissent. In my view, the debenture and indenture provisions, read as a whole, are inconsistent and ambiguous. Though the majority may well be correct in its interpretation as a matter of fact, I regard the matter as inappropriate for summary judgment. Accordingly, while I would vacate the judgment entered by the district court in favor of the plaintiff, I would remand for trial.