**G/GM Real Estate Corp.**

v.

**Svisse Chalet Motor Lodge of Ohio, Inc.**

*[Cite as 4 AOA 80]*

*Case No. 9-88-39*
*Marion County, (3rd)*
*Decided June 4, 1990*

Messrs. Spurlock, Sears, Pry & Griebling, Mr. G. Scott McBride, Attorney at Law, 120 North Lane Street, Bucyrus, Ohio 44820, for Appellant.

Messrs. Ashworth & McKinniss, Mr. Ted. McKinniss, Attorney at Law, 255 Executive Drive, Marion, Ohio 43302, for Appellee.

SHAW, P.J.

This is a breach of contract action brought by the plaintiff, G/GM Real Estate Corporation, against the defendant, Svisse Chalet Motor Lodge of Ohio, Inc., in the Court of Common Pleas of Marion County, Ohio. Plaintiff appeals from the judgment of the trial court finding that the plaintiff breached a written sales agreement for the purchase of commercial realty owned by defendant.

Plaintiff and defendant executed a sales agreement on March 4, 1985. The agreement provided that defendant would sell and plaintiff would purchase a motel, lounge and restaurant located on a tract of land in Marion County, Ohio. The stated purchase price for the property was $1,000,000.

In accordance with Article II of the agreement, upon execution of the contract, plaintiff made an initial down payment of $10,000 toward the purchase price. On June 4, 1985, plaintiff made an additional down payment of $15,000. The agreement required plaintiff to deliver to defendant at the closing the additional cash sum of $725,000. The remainder of the purchase price was to be financed by plaintiff's execution of a second mortgage in favor of defendant.

Pursuant to Article XVII of the agreement, the closing was to be held ninety days after execution or not later than June 4, 1985. Article XVII also contained a provision that permitted the plaintiff to extend the closing date for an additional thirty day period upon payment of an additional $10,000. However, Article XVII provided that any money paid for an extension of the closing date would be credited against the purchase price.

Plaintiff exercised the option to extend the closing date and thus, by the terms of the agreement, the closing was scheduled for July 4, 1985. However, at plaintiff's request the closing date was rescheduled to July 9, 1985. On July, 10, 1985, the President Harding Inn Corp. paid defendant an additional $10,000, on behalf of plaintiff, to extend the closing date to July 12, 1985.

Article XV of the agreement, which was subtitled "Seller's Obligations" required defendant to convey to plaintiff "fee simple title, good and marketable" in the property. Article XVI of the agreement, which was subtitled "Title Policy", required defendant to furnish plaintiff with a commitment of title insurance running to the plaintiff. Pursuant to the agreement, plaintiff was to pay the premium for the title policy at the

closing. In addition, Article XVI also provided in relevant part as follows:

"* * *

"*Section 2.* In the event the title commitment [sic] contains any encumbrance other than those set forth in Article IV, Buyer [plaintiff] shall have fourteen (14) days after receipt of the title commitment provided in Section (1) above to provide Seller [defendant] with notice of disapproval of said commitment. Thereafter Seller shall have thirty (30) days after receipt of such notice to cure any such defects in the title. Buyer's failure to notify Seller of disapproval within the time provided herein shall be a waiver of disapproval of the title commitment."

On July 11, 1985, one day prior to the scheduled closing, the Wexby Land Title Agency, Inc. issued a commitment for title insurance. Item six of Schedule B-Section 1 of the commitment revealed the existence of a recorded memorandum of lease on the real estate from defendant to another corporate entity, Hospitality Systems, Ltd. The memorandum of lease was listed on the commitment for title insurance as an encumbrance on the real estate.

Three days prior to closing, on July 9, 1985, defendant had attempted to cure the title defect by preparing an affidavit "certifying that said lease was terminated on July 25, 1980 for non-payment of rent by Hospitality Systems Ltd. and because Hospitality Systems Ltd. had vacated the premises." The affidavit was not recorded at the time of closing and in fact was not recorded until September 1985.

The parties met to close the transaction on July 12, 1985. There is considerable dispute as to whether the closing was aborted because of defendant's failure to tender good and marketable title or because of plaintiff's failure to tender the $725,000 due at the time of closing. In any event, on July 13, 1985, defendant began negotiations with a third party, for the sale of the real estate, which culminated in the property being sold for $1,050,000.

Plaintiff initiated the instant action alleging that defendant was in breach of the sales agreement because of its inability to convey good and marketable title at the time of closing. Defendant counterclaimed against plaintiff alleging that plaintiff breached the sales agreement because if failed to tender the required funds for the purchase price. The matter was tried to the court.

On September 2, 1988, the trial court filed a Memorandum of Decision finding that plaintiff breached the contract. The trial court's findings were journalized by Judgment Entry filed on September 16, 1988. The Judgment Entry incorporated by reference the findings made in the Memorandum of Decision. Plaintiff assigns two errors to the judgment of the trial court.

The first assignment of error is as follows: "THE TRIAL COURT COMMITTED SUBSTANTIAL ERROR PREJUDICIAL TO THE PLAINTIFF-APPELLANT IN FINDING THAT PLAINTIFF-APPELLANT BREACHED THE AGREEMENT OF MARCH 4, 1985 * * *."

In its Memorandum of Decision, the trial court expressly found that defendant tendered good and marketable title at the closing. The court also found that plaintiff did not tender the required sum of $725,000 at the closing. The trial court concluded that plaintiff breached the sales contract and thus entered judgment for defendant on the counterclaim. For the reasons that follow, we reverse the judgment of the trial court.

The trial court expressed two grounds in support of its finding that defendant tendered good and marketable title at the closing. First, the trial court correctly reasoned that, because the memorandum of lease did not comply with R.C. 5301.251, the instrument was not entitled to be recorded and therefore did not constitute an encumbrance. See *Straman* v. *Rechtine* (1889), 58 Ohio State 443 and *Mellon Nat'l Mortgage Co.* v. *Jones* (1977), 54 Ohio App. 2d 45. See, also, 2 McDermott, Ohio Real Property Law and Practice (3 Ed. 1966) 33, Section 1-31E.

However, as recognized by the Court of Appeals for Cuyahoga County, in *Novogroder* v. *Di Paola* (1917), 11 Ohio App. 374, "[t]he distinction between a cloud upon a title and an encumbrance to title must at all times be borne in mind." In distinguishing between an encumbrance to title and a cloud upon title, the court in *Novogroder,* *supra* set forth the following definitions of a cloud upon title:

"A cloud upon title is a title or incumbrance [sic], apparently valid, but in fact invalid. [Citations omitted.]

"* * *

"A cloud upon a title is but an apparent defect * * * the density of the cloud can make no difference in the right to have it removed. Anything of this kind that has a tendency, even in a slight degree to cast doubt upon the owner's title, and to stand in the way of a full and free exercise of his ownership, is * * * a cloud upon his title

which the law should recognize and remove. [Citations omitted.]

"A cloud on title is a title or encumbrance apparently valid, but in truth invalid. The test is: If an action should be brought based on the claim shown by the cloud, would be owner of the property have to offer evidence to defeat the claim. [Citations omitted.]" *Id.* at 378

Although the record of an instrument not entitled to record is a nullity, and is not to be considered an encumbrance, a purchaser who finds the record is nevertheless charged with actual notice of an outside interest. Thus, in our opinion, the situation presented by the instant case, when considered in light of the definitions set forth in *Novogroder, supra* discloses a cloud upon the title.

R.C. 5301.252 provides for the removal of clouds on title by recorded affidavit setting forth, *inter alia*, "[t]he happening of any conditions or event that may * * * terminate and * * * interest." We previously noted that defendant certified by affidavit that the leasehold interest in the property had terminated. However, as we also noted, at the time of closing, the affidavit had not been recorded. Therefore, at the time of closing, the cloud had not been removed and plaintiff was not required to accept what amounted to less than good and marketable title.

The second ground expressed by the trial court in finding that defendant tendered good and marketable title was that Articles XV and XVI of the contract must be construed as the parties agreement that "title insurance was to be the means by which good and marketable title was to be determined." Therefore, the trial court concluded that the requirement of good and marketable title was satisfied by the availability of title insurance without exception for any objectionable matter.

As a general rule, a purchaser cannot be compelled to accept insurance as a substitute for good and marketable title provided for by contract. See *Zinser* v. *Dornette* (Cin. Sup. 1924) 2 Ohio Law Abs. 346. See, also, 80 Ohio Jurisprudence 3d (1988) 106, Real Property Sales and Exchanges, Section 69. Moreover, rules of contract construction "cannot be used to vary the meaning of a contract which is clear and unambiguous on its face." *Aurora* v. *Bay Village* (1971), 27 Ohio App. 2d 17, 20.

We have reviewed Articles XV and XVI of the contract and find that the subject matter of the articles and the terms used therein were clear and unambiguous. Thus, resort to contract

construction was unnecessary in this case. Simply put, we find no expressed intent of the parties to substitute title insurance for good and marketable title. Thus, we find that defendant did not tender good and marketable title at the closing.

However, the record also reveals that plaintiff did not tender the required sum of $725,000 at the closing. In fact, the evidence is clear that, on the date of the closing, plaintiff had not obtained financing or otherwise raised the cash balance of the purchase price. Plaintiff's inability to tender the purchase price must be considered in light of Article XVII which states that "[s]eller shall deliver to Buyer the documents called for under Article XV conveying the premises to Buyer, and Buyer shall *simultaneously* deliver to Seller the sums and documents set forth in Article II." [Emphasis added.]

It is well settled that in the case of mutually dependent promises, neither party is obligated to perform nor is in default until the promise of the other is performed or the other party is ready and able and offers or tenders performance. See, generally, 80 Ohio Jurisprudence 3d (1988) 71, Real Property Sales and Exchanges, Section 43. "If it appears that the acts were to be simultaneous, then there is a mutual dependence between them * * *." 18 Ohio Jurisprudence 3d (1980) 88, Contracts, Section 190.

Paragraph two of the syllabus *Radabaugh* v. *Hart* (1899), 61 Ohio St. 73 reads in pertinent part as follows:

"Where two acts are to be done at the same time, as when the vendor has agreed to convey interests in real estate upon the payment of a given sum as purchase money * * * the conditions are what are known in law as mutual conditions, and neither party can maintain an action against the other without averring a performance * * * on his part."

Similarly, the syllabus in *Webb* v. *Stevenson* (1834), 6 Ohio 282 states that:

"Covenant to convey as soon as purchase money is paid is mutual, and calls for simultaneous performance. Party that would sue upon such a contract must perform or tender performance of his own part, before a cause of action accrues."

In accordance with the authorities cited, we find that the evidence in this case fails to establish a right in either party to maintain a breach of contract action. We therefore conclude that the trial court erred in entering judgment for defendant on the counterclaim because of plaintiff's

purported breach of the contract. Accordingly, the first assignment of error is well taken.

Plaintiff's second assignment of error is as follows:

"THE TRIAL COURT COMMITTED SUBSTANTIAL ERROR PREJUDICIAL TO PLAINTIFF-APPELLANT IN FINDING THAT DEFENDANT-APPELLEE IS ENTITLED TO RETAIN THE $45,000.00 PAID TO IT FOR PLAINTIFF-APPELLANT'S ACCOUNT * * *."

As we previously noted, at the time the sales contract was executed, plaintiff paid defendant $15,000. Thirty days later, plaintiff paid defendant an additional $10,000. Pursuant to the sales contract both payments were to be applied to the purchase price of the real estate.

In addition, plaintiff on one occasion paid defendant the sum of $10,000 in consideration of defendant's agreement to reschedule the closing. On a second occasion, a third party, President Harding Inn, Inc. paid an additional $10,000 on plaintiff's behalf in consideration of defendant's agreement to reschedule the closing. These sums also were to be applied to the purchase price under the terms of the sales contract.

The rule in Ohio is that the mutual failure of parties to perform their contract gives rise to the presumption of mutual assent to a recision of the contract. *Dickson* v. *Wolin* (App. 1934), 18 Ohio Law Abs. 107. See, also, *Lewis* v. *White* (1866), 16 Ohio St. 444; *Raudabaugh* v. *Hart, supra; Admiral Plastics Corp.* v. *Trueblood, Inc.* (C.A.6 1971), 436 F. 2d 1335 and *Rogers* v. *Simpson* (1908), 11 Ohio C.C.(N.S.) 561. Furthermore, in the case of a mutual recision, the purchaser may recover the money paid on the purchase price. See *Rogers, supra.* See, also, *Brown* v. *Johnston* (1952), 95 Ohio App. 136.

In the case before us, Articles II and XVII of the contract expressly provide that the $25,000 and the $20,000 respectively were to be applied towards the purchase price. Therefore, we find that plaintiff is entitled to restoration of the $45,000. Plaintiff's second assignment of error is well taken.

For the reasons stated and upon the authorities cited, the judgment of the trial court is reversed and remanded for entry of judgment not inconsistent with this opinion.

*Judgment reversed and cause remanded*

MILLER and EVANS, J.J., concur.